AAA Movers & another *vs.* Department of Public
Utilities.

Suffolk.   April 2, 1968. — June 3, 1968.

Present: Wilkins, C.J., Whittemore, Kirk, Spiegel, & Reardon, JJ.

*Public Utilities.   State Administrative Procedure Act.*

A decision by the Department of Public Utilities, disallowing a tariff filed
by an association of common carriers of property by motor vehicles
because the tariff, like the preexisting tariff, described its coverage in
terms of what was carried; ordering that when the association filed a
new tariff its coverage should be described as applicable to removal of a
household or other establishment from one place to another; and
stating that many carriers operating under the preexisting tariff had
confused the description in the tariff with their operating authority as
contained in their certificates of public convenience and necessity and
were carrying commodities which they were not authorized to trans-
port, that the disallowed tariff, because of its broad description of its
coverage, "overlaps some commodities described in other . . . tariffs
. . . [so] that the carrier has a choice of rates to apply," and that the
purpose of the change in description ordered in a new tariff was "to
make [it] clear that the [new] tariff does not expand the authority
contained in the certificates," was held to have been "accompanied by
a statement of reasons" satisfying G. L. c. 30A, § 11 (8), and to have
been supported "by substantial evidence" within c. 30A, § 14 (8) (e),
principally testimony by an official of the department as to matters
within his personal knowledge.

Petition filed in the Supreme Judicial Court for the
county of Suffolk on April 6, 1967.

The case was reserved and reported by *Spiegel*, J.

*James W. Kelleher* for the petitioners.

*Henry S. Healy*, Assistant Attorney General, for the De-
partment of Public Utilities.

Spiegel, J.   This is an appeal from a decision of the De-
partment of Public Utilities (department) dated February
23, 1967.   The petitioners are common carriers by motor
and are members of the Massachusetts Furniture and Piano
Movers Association, Inc. (association).   The association, on

March 11, 1966, filed on their behalf a tariff known as M.D.P.U. No. 11, to take effect on April 25, 1966. Their operations were at that time governed by a tariff known as M.D.P.U. No. 9, which took effect on May 29, 1961. On April 6, 1966, the department suspended the operation of M.D.P.U. No. 11 until February 25, 1967, and on its own motion ordered an investigation of the "propriety of the rates and charges, rules and regulations" of both M.D.P.U. Nos. 9 and 11. Hearings were held on September 20, 1966, and February 2, 1967. On February 23, 1967, the department issued a decision disallowing M.D.P.U. No. 11 and ordering that the association "may file a tariff designated as M.D.P.U. No. 12 which cancels M.D.P.U. No. 9 containing the same rates and charges proposed in M.D.P.U. No. 11, to become effective" after it is established "to the satisfaction of the [d]epartment that the tariff is in conformity with the terms of this decision and order . . . ." Other terms of the order modified the commodity description of household goods contained in the tariff and raised the declared value liability limits stated in the tariff and bills of lading. From this decision the petitioners appeal, asking that the court "annul and set aside the decision, orders and rulings of respondents." On the petitioners' application the single justice stayed the orders in an interlocutory decree entered April 24, 1967, and at the request of the parties reserved and reported the case without decision.

The dispute on this appeal relates to the commodity description for household goods to be contained in any new tariff.[1] The commodity description in the proposed tariff M.D.P.U. No. 11 is the same as that in M.D.P.U. No. 9, and reads as follows: "The term 'household goods' as used in this tariff means: Personal effects and property, new, used or to be used in a dwelling. New or used personal effects, furniture, fixtures, equipment, and the property of stores, offices, museums, institutions, hospitals, or other es-

---

[1] The department admits that the increased liability limits contained in the orders are not supported by substantial evidence and that this matter should be remanded to the department for further hearings.

tablishments; any articles new or used including objects of art, furniture, musical instruments, displays, and exhibits, and including also any articles which because of their unusual nature or value require specialized handling and equipment, usually employed in moving household goods."

The decision of the department states that "[m]any carriers operating under the tariff have confused the description in the tariff with their operating authority as contained in the certificates of public convenience and necessity issued by this [d]epartment and are carrying commodities . . . which they are not authorized to transport. Moreover with this broad definition, the tariff overlaps some commodities described in other agency tariffs in which a number of the association members also concur. The result is that the carrier has a choice of rates to apply . . . ." In its decision, the department therefore orders that this definition be deleted from any future tariff, and that such tariff "shall clearly state on its title page: 'Rates, Rules and Regulations Applying on the Transportation of household goods in whole or in part incident to a move by a householder from one dwelling to another and of office equipment or property of a commercial establishment incident to the removal of an establishment in whole or in part from one location to another. Rates and charges stated herein apply *only* to the extent participating carriers are certificated by the Massachusetts Department of Public Utilities.'" The purpose of this change, as stated in the decision, "is to make clear that the tariff does not expand the authority contained in the certificates."

The petitioners concede the desirability of preventing a carrier from enlarging "its certificate powers by filing a tariff" or from being "able to choose the rate which is to apply to a given transaction." They contend, however, that there was not sufficient evidence at the hearings to justify the department in determining that such abuses exist or that the proposed changes would put an end to them. At the second hearing, there was testimony by Paul M. Fitzsimmons, currently Director of the Commercial Motor Ve-

hicles Division of the department, and formerly Senior Rate Analyst. Fitzsimmons testified that the existing definition "in a great many instances exceeds the operating authority of the carrier" and that "the carriers make use of the definition to determine their operating authority rather than the certificate itself." He also stated that there have been "instances where it has given them a choice of higher or lower rate, and for their convenience they have assessed this tariff under the guise and belief that it comes under the definition rather than a weight rate where the tariff charges to the shipper would have been considerably less." Fitzsimmons gave one example "pulled at random" of a carrier whose operating authority, under its certificate, was considerably narrower than the definition under the tariff. He gave another example, without naming the carrier, where a carrier had a choice of two rates and chose the higher, with the result that the department ordered that a refund be given. Fitzsimmons said that this was "not an isolated instance."

General Laws c. 30A, § 11 (2), provides that "agencies need not observe the rules of evidence observed by courts," and that "[e]vidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." Fitzsimmons testified to matters within his personal knowledge as an official of the department. No objection was made to his testimony, nor did the association offer any evidence on these issues.

The department has wide latitude in the admission of evidence and "unless the admission of the evidence resulted in a denial . . . of substantial justice," the petitioners "have no complaint adequate in law to nullify the findings . . . ." *Mayor of Everett* v. *Superior Court*, 324 Mass. 144, 148. *Sudbury* v. *Department of Pub. Util.* 351 Mass. 214, 220. The testimony of Fitzsimmons appears to be "the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs," and it supports the decision of the department.

The petitioners argue that the "carriers who are doing these objectionable things," "are not named, nor are the terms of their certificates set forth, nor are the alleged duplicating tariffs or *their* terms set forth." The witness Fitzsimmons did name one such carrier, and testified to another instance where two tariffs overlapped and an impermissible choice of rates was made. He further testified that these were not isolated instances. There are over 300 members in the association, and it was not necessary for the department to examine all of their certificates or to compare the proposed tariff with all of the other tariffs in which they may concur to detect possible overlapping. The situation here is analogous to those in which the Interstate Commerce Commission makes use of so called "typical evidence." See *New England Divs. Case*, 261 U. S. 184, 197–201. General Laws c. 30A, § 11 (2), states that "[a]gencies may exclude unduly repetitious evidence." We are of opinion that the evidence in the record, while not so extensive as might have been, is adequate to support the department's decision.

The petitioners further argue that there is no evidence that the measures prescribed by the department will cure the evils they are designed to meet. Conceivably, this may be true. However, we do not believe that the department is obligated to present such proof if the proposed change appears to be reasonably calculated to achieve the results described. While the proposed language does not seek to define "household goods," it suggests a functional definition based on whether the transaction to be covered is related to the removal of a household or a business from one place to another. In this regard it seems to us a marked improvement over the objectionable inclusiveness of the previous definition. Fitzsimmons testified that "[t]his tariff over the years has been understood . . . to be primarily a tariff covering moving." We believe that it is reasonable to define the tariff's coverage not in terms of what is carried but in terms of whether the carrying is "moving" in the sense of the removal of a household or other establishment.

The decision of the department was "accompanied by a

statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision," G. L. c. 30A, § 11 (8), and these were not "[u]nsupported by substantial evidence." G. L. c. 30A, § 14 (8) (e). A final decree is to be entered affirming the decision and orders of the department in so far as it concerns the deletion of the commodity description for "household goods" and the insertion of the recited matter on the title page of the new tariff. The case is remanded for further hearings on the issue of increased liability limits.

*So ordered.*