TOWN OF FRAMINGHAM *vs.* DEPARTMENT OF PUBLIC UTILITIES & another
(and two companion cases[1]).

Suffolk.    October 7, 1968. — January 6, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Public Utilities. Electricity. Electric Company. Zoning,* Public utilities. *State Administrative Procedure Act. Evidence,* Before Department of Public Utilities.

Upon appeals by three towns under G. L. c. 25, § 5, from a decision by the Department of Public Utilities granting a petition by an electric company under c. 40A, § 10, for exemption from the operation of the towns' zoning by-laws of the company's existing right of way therein on which stood a low voltage transmission line on wood pole H-frames and on which the company proposed to construct a higher voltage transmission line on tall steel towers, where it appeared that no eminent domain proceedings were involved, it was held that there was no error on the part of the department in denying as irrelevant in the proceeding before it requests for rulings by the towns in substance that the desired zoning exemptions could not be granted because construction of the proposed line had not been authorized by the department under c. 164, § 72. [142–143]

---

[1] Town of Sudbury *vs.* Department of Public Utilities & another.
Town of Wayland *vs.* Department of Public Utilities & another.

A petition to the Department of Public Utilities by an electric company under G. L. c. 40A, § 10, for exemption from the operation of the zoning by-laws of certain towns of the company's right of way therein on which it proposed to construct a heavy capacity transmission line was not premature because the company had not yet procured necessary permissions to cross public lands under c. 164, § 72, and public ways under c. 166, §§ 22 and 28.   [143]

At a hearing by the Department of Public Utilities of a petition under G. L. c. 40A, § 10, by an electric company for exemption from the operation of certain towns' zoning by-laws of the company's right of way therein on which it proposed to construct an overhead high voltage transmission line, exclusion of testimony of a witness for the company on cross-examination on the subject of an underground transmission line did not constitute reversible error where it appeared that subsequently the witness testified on that subject and was extensively cross-examined thereon by counsel for one of the towns [144];  nor was it reversible error to permit an attorney called by the company to give his opinion on a matter not constituting a defence to the proceeding [144–145];  nor was it reversible error to exclude testimony of an expert witness concerning his evaluation of studies, in which he had not personally engaged, on the effect of electromagnetic fields on human and animal nervous systems [145].

At a hearing by the Department of Public Utilities of a petition under G. L. c. 40A, § 10, by an electric company for exemption from the operation of certain towns' zoning by-laws of the company's right of way therein on which it proposed to construct an overhead high voltage transmission line designed to afford the area its appropriate share of power from the New England grid and to alleviate an anticipated power deficiency, detailed evidence produced by the company warranted a finding by the department that the use of the right of way proposed by the company was reasonably necessary for the convenience or welfare of the public as required by § 10 for the granting of zoning exemptions [145–146];  a contention that the company had the burden of producing evidence to disprove factors having a possible detrimental effect on the towns from construction of the proposed line, irrespective of the department's investigation, was without merit [146–147].

At a hearing of a petition under G. L. c. 40A, § 10, by an electric company for exemption from the operation of certain towns' zoning by-laws of the company's right of way therein on which it proposed to construct an overhead high voltage transmission line, there was no error on the part of the Department of Public Utilities in failing to grant a request by the towns concerning the comparative costs of underground and overhead construction of transmission lines.   [147–148]

PETITIONS filed in the Supreme Judicial Court for the county of Suffolk on April 17, 1967.

The cases were reserved and reported by *Reardon,* J.

*Philip B. Buzzell* for the Town of Sudbury (*Thomas F. Myles,* for the Town of Wayland, with him).

*Donald R. Grant* (*John J. Desmond, III,* with him) for Boston Edison Company.

*Henry S. Healy,* Assistant Attorney General, for the Department of Public Utilities.

*John M. Kahn,* for the Town of Framingham, joined in a brief.

REARDON J.  These are three petitions for appeal under G. L. c. 25, § 5, from a final decision of the Department of Public Utilities (Department) granting a petition by the intervener, Boston Edison Company (Edison), which under G. L. c. 40A, § 10, sought an exemption from zoning restrictions for a proposed line for the transmission of electricity at 230 kilovolts, strung on towers, to be constructed on its existing right of way between Medway and Sudbury.  The line proposed will be approximately 17.25 miles in length and will pass through seven towns, three of which are the petitioners.  Medway and Sherborn did not appeal and the towns of Holliston and Natick were not included as respondents in the Edison petition on the basis that the existing zoning by-laws of those towns do not prohibit the installation.  The Department held hearings on four days and received evidence including expert testimony and exhibits.  Edison's petition asserted that the use of the right of way was reasonably necessary for the convenience and welfare of the public and the Department found this to be a fact.

The Department made numerous subsidiary findings and referred to the fact that the proposed line would be installed on Edison's present right of way, 250 feet in width.  Reference was also made to the increased electrical capacity requirements expected within the next few years in the area served by the present transmission system.  The decision described the right of way as being presently occupied by two 115 kilovolt wood pole H-frame lines along a portion of the right of way to Framingham, with one such line extending to Waltham by way of Sudbury.  The present poles

vary in height from sixty-five to eighty feet and the contemplated construction would consist of two circuit, wide base, lattice type steel towers varying in height from 110 to 125 feet, except at certain substations where the towers would be 160 feet in height. The structures would be spaced approximately 1,000 feet apart. Clearance above the ground of the wires suspended from such structures would be not less than twenty-five feet, and over highways not less than twenty-eight feet. The Department also weighed evidence of the effect of the new line on radio and television reception, reviewed the possibility of underground lines, and considered both cost and aesthetics in arriving at its decision. The cases came before the single justice who reserved and reported them without decision. At the hearing before the Department numerous requests for rulings were filed by the respective towns. Problems arising from the disposition of these requests, as well as those raised in other assignments of error, will be discussed seriatim.

1. It is argued by the towns that Edison must procure fresh approval from the Department under G. L. c. 164, § 72, before it can construct on its present right of way the taller and higher voltage line. It is further argued that no valid exemption from local zoning by-laws can be given by the Department until, first, authority to construct a new line has been extended under § 72. The towns in their appeals rely mainly on *Sudbury* v. *Department of Pub. Util.* 343 Mass. 428, 431–432 (the first *Sudbury* case), which concerned a petition for authority to construct a line on land on which Edison then had no rights, either through private negotiation or by eminent domain, wherein the court stated that G. L. c. 164, § 72, contemplates two separate permissions from the Department, one authorizing the construction of a line and the second authorizing requisite eminent domain takings. Reliance is also placed by the petitioners on *Hamilton* v. *Department of Pub. Util.* 346 Mass. 130, which details at pages 144 and 145 those factors which the Department should consider in making determinations on petitions brought under G. L. c. 164, § 72.

On the other hand, Edison, in asking that the question be determined in this case, contends that it is not required to seek approval of the Department under G. L. c. 164, § 72, unless eminent domain proceedings are necessary in order to secure the needed right of way. It buttresses its position by reference to the legislative history of that statute, the common understanding of § 72 by the Department and the electric companies over the years which it states to be in accordance with its position, and the adequate protection which it alleges is afforded to the public by certain other statutes conferring powers of general and ample supervision on the Department over properties of electric companies. The Department holds the view that its power to grant zoning exemptions under G. L. c. 40A, § 10, is not dependent on prior permissions granted the utility under G. L. c. 164, § 72. The author of this opinion agrees with Edison that G. L. c. 164, § 72, has no applicability to the case at bar and that, consonant with the request expressed by Edison and the towns, that point should be decided now. The majority of the court, however, are of the view that it is not now necessary to determine whether in the first *Sudbury* case the court gave too wide a significance to the first few sentences of § 72 in deciding that case where a later eminent domain taking was contemplated. There was then no reason to consider those sentences in relation to a situation where no eminent domain takings would later be necessary. The scope of those sentences can be determined in other circumstances where such determination is required. The Department dealt with the issue which Edison now raises in refusing the first three requests of each town which are similar, first, on the ground that the requests had been "defectively drawn" and, second, in the following language: "We construe these requests to mean that on all the evidence a finding is required that some authority under § 72 is necessary and that this authority has not been given by the prior orders of the Department. *We deny the requests because it is not necessary to make a determination of them in this proceeding,* and, in any case, the evidence does not

require a finding as matter of law that such authority is now necessary" (emphasis supplied). The Department's action was correct in that the requested rulings were not relevant, for a proceeding under c. 40A, § 10, as amended, is not necessarily dependent on any action under c. 164, § 72, as amended. Neither section refers to the other and a proceeding under c. 40A, § 10, may go forward independently of a proceeding under § 72. There was no error in the denial by the Department of the requests for rulings by the towns dealing with authority to construct under G. L. c. 164, § 72.

2. We pass to a consideration of further contentions of the towns raising questions somewhat similar to those already discussed. They assign as error the refusal of the Department to grant certain requests for rulings dealing with permissions to cross public lands under G. L. c. 164, § 72, and public ways under G. L. c. 166, §§ 22 and 28. Relative to these requests, the Department takes the position on the authority of the second *Sudbury* case, 351 Mass. 214, 224, that its power to grant zoning exemptions pursuant to G. L. c. 40A, § 10, does not depend on prior permits which it may have granted to construct and use a line, or permits granted by municipalities for wire crossings. The petitioners base their argument for requisite permissions, on the other hand, on increases in hazards involved in the construction of a new heavy capacity line which must "necessarily require new consideration by the public authorities." Request No. 5, identical as to all three towns, is directed to their contention that until these permissions have been obtained the present petition for exemption from zoning by-laws is premature. This contention lacks merit. "Obviously, all acts which must be performed before a transmission line can be constructed cannot be performed simultaneously." *Sudbury* v. *Department of Pub. Util.* 351 Mass. 214, 224. Nonetheless, it is apparent, and for the purpose of inhibiting further litigation it must be stated, that what we have hitherto said does not relieve Edison from the necessity of procuring such permissions

as may be required under G. L. c. 166 before constructing the new line. See *Boston Edison Co.* v. *Selectmen of Concord, ante,* 79.

3. The petitioners assign as error certain rulings on evidence made at the hearing by the Department. The towns first complain of the exclusion of testimony in cross-examination of one Weed, a witness for Edison, relative to studies conducted by him concerning the possibility of installation of an underground line on the transmission easement. We note those provisions of the State Administrative Procedure Act that an agency "need not observe the rules of evidence observed by courts . . . . Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs. . . . G. L. c. 30A, § 11 (2). '[U]nless the admission [or exclusion] of the evidence resulted in a denial . . . of substantial justice,' the appellants have no valid complaint." *Sudbury* v. *Department of Pub. Util.* 351 Mass. 214, 220. *Hamilton* v. *Department of Pub. Util.* 346 Mass. 130, 146.

But a review of the transcript indicates that Weed later testified on the subject matter which the petitioners claim was excluded, and was extensively cross-examined by Sudbury's counsel on the issue. The original exclusion did not work a substantial injustice and does not constitute reversible error. *AAA Movers* v. *Department of Pub. Util.* 354 Mass. 390, 393. Wigmore, Evidence (3d ed.) § 4 (a), § 4 (c), pp. 76–78. Note, 29 Harv. L. Rev. 208, 210–211.

A second ruling under attack related to testimony of an attorney, Arthur L. Bartlett, called by Edison, who stated his opinion that Stockfarm Road in Sudbury had never become a public way. It is argued by the petitioners that this was a conclusion and as such a matter for decision by the Department and, ultimately, by the court. However, without reference to the fact that precise rules of evidence are not applicable to Department hearings, the Department made no finding on the status of Stockfarm Road. We have already indicated that failure to obtain relevant street

crossing permissions where necessary would not be a defence to this proceeding and the ruling, therefore, did not result in an injustice.

A third complaint of the towns is that it was error to exclude the testimony of Dr. William A. Saxton concerning his evaluation of studies on the effect of electromagnetic fields on human and animal nervous systems. The petitioners argue that the Department based its exclusion on the fact that Dr. Saxton had not personally engaged in the studies which he was evaluating and that it would be absurd to permit such testimony on scientific experiments only when the witness himself had performed them. Edison and the Department rely on the settled rule which excludes "learned treatises" when they are offered for the purpose of proving the truth of their contents. See *Ashworth* v. *Kittridge,* 12 Cush. 193, 194–195; *Allen* v. *Boston Elev. Ry.* 212 Mass. 191, 192; Hughes, Evidence, § 621. We agree with the respondents' views, and we are of further opinion that this ruling is within the reasoning of *State Tax Commn.* v. *Assessors of Springfield,* 331 Mass. 677, 684–685, and cases cited, wherein there was reference to the oft quoted statement of Chief Justice Holmes in *National Bank of Commerce* v. *New Bedford,* 175 Mass. 257, 261: "An expert may testify to value although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience. But the fact that an expert may use hearsay as a ground of opinion does not make the hearsay admissible."

4. The petitioners question in certain assignments of error whether the evidence before the Department was sufficient to enable it to enter the order which it did. The thrust of the petitioners' claim would seem to be not that the Department failed to consider all relevant factors as outlined in *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, and *Framingham* v. *Department of Pub. Util.* 351 Mass. 127, but rather that Edison produced no evidence on these issues. The issue of whether the line was needed was raised by requests for rulings and assignments of error

from all the towns.  Our reading of the transcript leads us
to conclude that Edison did introduce evidence sufficient to
sustain the findings.  The purposes of the line, which is
designed to afford the area its appropriate share of power
from the New England grid and to alleviate an anticipated
power deficiency, were explained in detail by highly tech-
nical testimony offered by Edison.  The Department could
disbelieve this evidence but was also free to believe it.
Certainly it was detailed sufficiently to avoid a ruling that
the evidence was insufficient as a matter of law.  Edison also
introduced evidence concerning underground alternatives
and relative costs.  Cost estimates were given and these
alternatives were quite thoroughly explored in the light of
those estimates.  Notwithstanding the lack of exhaustive
subsidiary evidence supporting the cost figures, it was open
to the Department to believe the expert testimony on costs.
Similarly, questions on the suitability of the locus of the
proposed facility and its physical character and uses there
permitted were covered by testimony before the Depart-
ment concerning terrain and by-laws in effect.

5. The remaining assignments of error have to do with
alleged detrimental effects of the construction of the new
line on the towns involved.  On this issue the towns offered
the only evidence designed to produce from the Department
a decision to the contrary of the one which it gave.  There
was sustained cross-examination of the towns' witnesses.
There is before us a problem raised by two requests from
each town which sought to place on Edison the burden of
the production of the necessary evidence to enable the
Department to pass upon all the issues.  The question is
whether the Department is under the necessity of full
inquiry into all relevant factors to determine whether
there may be possible detrimental effect from approval
(in which event it would not give such approval), or whether
the Department may simply approve the line, absent
persuasive evidence to the contrary from opponents.  The
petitioners seek a requirement that Edison prove, and the
Department recognize, a negative, e.g., that the line will

*not* damage health. This argument is based on the alleged resources which the utility has to put its best foot forward, frequently with adversaries not so well financed and, in some instances, even nonexistent. The Department is charged with the duty of constant and general supervision of the electric companies "with reference to the safety and convenience of the public" (see G. L. c. 164, § 76), and has laid upon it responsibilities with regard to the public interest which are general and continuing. In most cases, factors which severely threaten that interest will appear from proposals themselves, and it is to be anticipated that the Department will not issue approvals until all dangers and detriments have been reasonably considered by it. The Department in fact has available to it instruments of investigation to assist it in its deliberations. Where adversaries to petitions do put in an appearance it would seem reasonable to count on their efforts to point out potential dangers and to expect the Department's full consideration of them. *Sudbury* v. *Department of Pub. Util.* 351 Mass. 214, 218. See *Almeida Bus Lines, Inc.* v. *Department of Pub. Util.* 348 Mass. 331, 343; *AAA Movers* v. *Department of Pub. Util.* 354 Mass. 390, 392–394.

6. The foregoing discussion, with certain exceptions alluded to below, covers the rulings by the Department on the requests filed by the towns which in the interests of clarity we have not discussed by number. However, our review of these indicate that the Department was not in error in such rulings as it made. In addition, the Department did not grant requests dealing with the certain issues which the towns claimed should be considered and the possible effect of the proposed line on each town with references to the line's unsightliness, the towns' general welfare, and the taxable values of property therein. The Department, however, took evidence on these issues and discussed them in its decision, thus granting the requests in effect. A further request, which was not granted, had to do with the comparative costs of underground and overhead construction and the Department was not in error in failing

to grant it. There is no merit in the other assignments
of error.

7. A decree is to be entered affirming the decision and
order of the Department of Public Utilities in case No.
15192.

*So ordered.*