BETH ISRAEL HOSPITAL ASSOCIATION *vs.* RATE SETTING
COMMISSION & another.[1]

Suffolk. February 13, 1987. — July 20, 1987.

Present: PERRETTA, KAPLAN, & WARNER, JJ.

*Division of Hearings Officers. Hospital,* Medicaid reimbursement.
*Medicaid. Regulation. Rate Setting Commission. Administrative Law,*
Regulations, Rate setting, Hearing. *Practice, Civil,* Review of adminis-
trative action, Declaratory proceeding.

Where an appeal by a hospital from rates of reimbursement for Medicaid
patients set by the Rate Setting Commission constituted a challenge to
the substantive validity, i.e., the adequacy, of a regulation of general
application and not to the peculiar application of that regulation to the
particular hospital, the Division of Administrative Law Appeals was
without authority to act and, furthermore, the remedy for the hospital
was to proceed by way of an action for declaratory judgment under
G. L. c. 30A, § 7, and c. 231A. [501-505]

CIVIL ACTION commenced in the Superior Court Department
on July 20, 1983.

The case was reported by *Cortland A. Mathers,* J.

*Mark A. Borreliz* for the plaintiff.

*William L. Pardee,* Assistant Attorney General, for the de-
fendants.

WARNER, J. At issue in this appeal is the authority of the
Division of Administrative Law Appeals (division) to hear and
decide an appeal by Beth Israel Hospital (hospital) from the
rates of reimbursement for Medicaid patients set for the fiscal
year 1980 by the Rate Setting Commission (commission).[2] See

---

[1] Division of Administrative Law Appeals, at the time of the administrative
proceedings in this case, called the Division of Hearings Officers. See G. L.
c. 7, § 4H, as in effect prior to St. 1983, c. 683.

[2] The issue was raised by the commission before the division but not
argued in the joint brief initially filed in this court by the commission and

G. L. c. 6A, §§ 32 and 36; G. L. c. 30A, § 14. A judge of the Superior Court, at the request of the parties, reported the case without decision to this court. See Mass.R.Civ.P. 64, 365 Mass. 831-832 (1974).

*Background.*

In November, 1979, the commission assigned a prospective per diem rate of $341.03 to the hospital,[3] pursuant to a rate setting methodology established by the commission and set forth in 114.1 Code Mass. Regs. §§ 3.00 et seq. (1979). The regulations provided the procedure for calculating Medicaid rates.[4] They also set out eleven kinds of cost increases, otherwise not recognized in the rate, which could be a basis for a provider's request to the commission for an administrative rate

---

the division (the division's decision was adverse to the hospital on the merits), although mention was made of the continuing controversy on the question between the commission and the division. We were informed at oral argument that several decisions of the division pending judicial review involve the issue. Following oral argument, we requested that the parties file further briefs addressing the question. Briefs were thereafter filed by special assistant attorneys general for the division, the Attorney General for the commission, and the hospital. The last of the briefs was filed on May 26, 1987.

[3] For reasons not pertinent to this appeal, the hospital's rate was adjusted several times and finally established at $345.39.

[4] The rate setting system was a prospective one. A hospital's per diem rate represented the projected average daily cost that the hospital would incur in treating each of its patients, Medicaid and non-Medicaid, alike. The commission's rate calculation was a composite of the following basic elements:

> 1. Base year costs (the base year is the year two years prior to the rate year; the costs of the year preceding the base year were used if they were lower than base year costs after being adjusted upward by an inflation allowance) increased by an inflation factor.
> 2. "Non-operating" expenses, including depreciation and legal fees ("fixed costs").
> 3. Any allowance resulting from an "administrative adjustment."

These three elements were combined, then divided by allowable base year total patient days to determine a per diem rate.

A new rate setting methodology was established by G. L. c. 6A, § 68, added by St. 1982, c. 372, § 1B. The rate remains prospective, but it is not computed on a per diem basis. The new methodology is set out in detail in § 68 and in 114.1 Code Mass. Regs. §§ 28.00 et seq. (1986).

adjustment. Among those factors were costs associated with capital expenditures for which the hospital had received a determination of need pursuant to G. L. c. 111, §§ 25B-25G, costs incurred because of statutory or regulatory requirements, and extraordinary increases which threatened the hospital's financial stability. 114.1 Code Mass. Regs. § 3.14 (1979).

The hospital appealed its rate to the division pursuant to G. L. c. 6A, § 36, claiming that the failure of the commission's regulations to provide a mechanism for rate adjustment based on increased provision of ancillary services and procedures per patient day ("intensity") rendered the commission's rate formulation, and, therefore, the hospital's rate, unfair. The hospital claimed to have experienced intensity, which was not reflected in its rate, between 1977 and 1980, resulting in a twenty-two dollar per patient day shortfall and a $400,000 loss to the hospital for fiscal year 1980. The hospital sought before the division an adjustment of its 1980 rate to reflect the claimed intensity changes and consequences.

The intensity claim was based on two primary factors: (1) a reduction in patient's average length of stay (ALOS intensity); and (2) a shift in the hospital's case mix toward more intensely ill patients (case mix intensity). The hospital presses only its ALOS intensity claim in this appeal. According to the ALOS intensity theory presented to the division, pressures for cost containment came from various sources, including Federal legislation creating Professional Standards Review Organizations (PSRO's) to monitor the efficient use of resources by hospitals receiving Federal funds (see 42 U.S.C. § 1320c [1976 & Supp. IV 1980]), pressures for cost control exerted by the insurance industry, and the hospital's self-imposed restraints designed to achieve more efficient use of its resources. These pressures resulted in decreases in the average length of time patients remained hospitalized and contributed to what the hospital described as an industry-wide "phenomenon" of ALOS intensity.

Reductions in ALOS save some patient day costs. The hospital contends, however, that while ALOS reductions eliminate relatively passive days of hospitalization, they also compress

the delivery of ancillary services and procedures, such as laboratory, radiology and anesthesiology, into fewer days. As a result, the average cost per day for the days in which patients are actually hospitalized tends to be higher. Compounding the problem, technological innovations, such as computer monitoring of cardiac patients, use of computerized tomography scanners, ultrasound, and nuclear medicine, have increased the intensity of ancillary services and raised the hospital's per diem patient costs.

At the relevant times, the commission's regulations did not provide a mechanism for requesting administrative rate adjustments based on intensity. See note 17, *infra*. The hospital concedes that the commission calculated its rate correctly according to the commission's regulations for hospitals in its class and that the regulations are lawful as far as they go. The hospital makes no claim that the rate is confiscatory. See *Massachusetts State Pharmaceutical Assn*. v. *Rate Setting Commn.*, 387 Mass. 122, 136 n.13 (1982).

At the opening of the hearing before the division, the commission moved for dismissal, asserting that the division had no authority to hear the hospital's appeal as it constituted a facial challenge to the commission's regulations, that the hospital failed to state a claim upon which relief could be granted as the commission's regulations did not recognize a claim based on intensity, and that the hospital's claims sought to invalidate the prospective system of reimbursement. The motion was denied, the division ruling that it had the authority to "go beyond" commission regulations in certain circumstances. The hearings officer concluded that the division had authority to ignore validly promulgated and properly applied commission regulations if it found that the resulting rate was not fair, adequate and reasonable, and if it found that a different method of calculation would yield a fair, adequate and reasonable rate for that provider. The division relied on the decision in *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.*, 378 Mass. 189 (1979),[5] along with two previous division deci-

---

[5] The division "has the final authority at the agency level to determine questions of law relating to the rate of payment to a provider of health care services" (at 190).

sions in which hearing officers had recognized ALOS intensity though the commission's regulations did not.[6]

At the hearing, there was evidence from the hospital as follows. Based on the hospital's study of its ancillary service utilization, it had experienced increased ALOS (as well as case mix)[7] intensity between 1977 and 1980. The hospital monitors patients' length of stay in order to comply with PSRO requirements, as well as to ensure the hospital's efficient use of its resources. The increasingly complicated case mix of patients at the hospital, the decreasing length of hospital stay, and technological advances have all resulted in greater intensity of care. The validity of the hospital's statistical support for its claims of increased intensity of ancillary services between 1977 and 1980 was challenged by the commission.

The hearings officer refused relief. She held that because the hospital was seeking an "extraordinary" remedy in requesting the division to bypass properly promulgated commission regulations and to recognize "intensity" as a basis for rate adjustment, the hospital would be held to a heightened burden of proof.[8] The hearings officer concluded that the hospital had not met its burden of showing by "credible and substantial" evidence that it had experienced the claimed intensity and that its rate was consequently not fair, adequate and reasonable in light of regulatory goals such as cost containment. Specifically, she found that the hospital's escalating costs and complexity of care were caused, "to an undetermined extent," by evolutionary changes in medical practice, costs intended to be contained

[6] Berkshire Medical Center vs. Rate Setting Commn., HD-74-1-H-2163 et al. (1980), and Baystate Medical Center vs. Rate Setting Commn., HD-2937 et al. (1982).

[7] As noted, the hospital on appeal presses only its ALOS intensity claim. It may well be that the evidence on the ALOS and case mix intensity theories was inextricably interwoven, but we need not reach the question because we do not consider the merits of the challenge.

[8] This, and similar expressions in opinions by the division, might be thought to refer to a provider's burden of proof in a declaratory judgment action challenging the substantive validity of commission regulations. See Massachusetts State Pharmaceutical Assn. v. Rate Setting Commn., supra at 126, 136.

by the prospective system, as well as by the hospital's desire to remain a leader in its field. She further found that the statistics on which the hospital based its claim of increased intensity of ancillary services were not sufficiently precise or reliable to form the basis for an alternative calculation of its rate.

*The Statutory Framework.*

A detailed statutory framework sets out the Commonwealth's policies and procedures for reimbursing health care providers. The Legislature has delegated to the commission "sole responsibility for establishing fair, reasonable and adequate rates to be paid providers of health care services by governmental units . . . ." G. L. c. 6A, § 32, first par.[9] The commission establishes rates of reimbursement to hospitals for the care of publicly assisted patients under the Medicaid Program. See 42 U.S.C. §§ 1396 et seq. (1982); G. L. c. 118E.

Commission members include a chairman (who must have administrative experience, as well as an advanced degree in business administration, public administration, or law), a certified public accountant, and a person experienced in medical economics. G. L. c. 6A, § 32, first par. The commission establishes rates for hospitals "after public hearing, at least as often as annually," *id.* at third par., and is charged with "promulgat[ing] rules and regulations for the administration of its duties and the determination of rates . . . subject to the procedures described by chapter thirty A." *Id.* at tenth par. The Legislature has directed the commission to "establish rates on a prospective basis, subject to rules and regulations promulgated by the commission whenever possible." *Id.* at sixth par.

The commission's regulatory activities are subject to oversight by a rate setting commission hospital policy review board (the board) consisting of eleven members, two appointed by the Secretary of Human Services and nine appointed by the Governor. Two members must be chosen from persons recommended by the Massachusetts Hospital Association, and one must be a physician chosen from nominees of the Massachusetts

---

[9] References to G. L. c. 6A, § 32, are to that section as in effect prior to St. 1981, c. 776, § 1.

Medical Society. Other members include representatives of a health system agency, the insurance industry, business, labor and the elderly. The representatives of business, labor and the elderly must have experience in or knowledge of health care delivery or hospital financing. G. L. c. 6A, § 34A. There are elaborate provisions for, among other things, recommendations and public hearings of the board on proposed regulations of the commission. *Ibid.*

The division hears appeals from persons aggrieved by particular rates the commission has established. G. L. c. 6A, § 36. The division is composed of magistrates responsible for hearing administrative law appeals from various agencies. G. L. c. 7, § 4H. Administrative magistrates must be members of the Massachusetts bar and must have had trial experience. *Ibid.* The division conducts rate appeals through "adjudicatory proceeding[s] in accordance with chapter thirty A . . . ." G. L. c. 6A, § 36, second par.[10] Section 36 requires that "[o]n appeal, the rate determined for any provider of services shall be adequate, fair and reasonable for such provider, based, among other things, on the costs of such provider" (first par.).

*The Division's Authority.*

A procedural or substantive challenge to a regulation of general applicability under which particular rates are established may be asserted in a declaratory judgment action under G. L. c. 30A, § 7,[11] and G. L. c. 231A. See *Massachusetts Gen. Hosp.* v. *Rate Setting Commn.*, 359 Mass. 157, 163-165 (1971); *Lynn* v. *Rate Setting Commn.*, 21 Mass. App. Ct. 576, 579-580 (1986). A substantive challenge is mounted "on the ground that the general regulation is substantively defective, that is, inadequate." *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn.*, 387 Mass. at 126. On the other hand, an individual provider's rate (a regulation of particular applica-

---

[10] References to G. L. c. 6A, § 36, are to that section inserted by St. 1973, c. 1229, § 2.

[11] "Unless an exclusive mode of review is provided by law, judicial review of any regulation . . . may be had through an action for declaratory relief . . . under chapter two hundred and thirty-one A." G. L. c. 30A, § 7, as appearing in St. 1974, c. 361, § 3.

tion) may be initially challenged only by appeal to the division for an adjudicatory hearing. See G. L. c. 6A, §§ 32 and 36; *Massachusetts Gen. Hosp.* v. *Rate Setting Commn., supra*;[12] *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn., supra* at 139; *Lynn* v. *Rate Setting Commn., supra.* See also *Palm Manor Nursing Home, Inc.* v. *Rate Setting Commn.*, 359 Mass. 652, 655 (1971).

The division is an inappropriate forum for a substantive challenge to regulations of general applicability under which particular rates are established. See *Massachusetts Gen. Hosp.* v. *Rate Setting Commn., supra.* "[General Laws] c. 6A, §§ 32 and 36, were written for individual provider appeals from commission regulations setting forth a particular rate or rates for that provider alone." *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn., supra.* See *Massachusetts Gen. Hosp.* v. *Rate Setting Comm., supra.* "Literally, . . . the statute [G. L. c. 6A, §§ 32 and 36] permits an aggrieved provider to appeal to the division from any rate determination of the commission. But the standard expressed for the division's review of a commission rate determination has little bearing on the propriety of a rate regulation of general applicability. The division's review is supposed to focus (but not exclusively) on the aggrieved provider's costs and the reasonableness of the rate for the provider. There is no suggestion that the division should consider whether the rate meets the standard for an industry-wide rate. Nor, as we have held, does the division have any procedure to permit a class action challenge to a rate regulation of general applicability. In short, the statutory and administrative pattern suggests that the division may have no role in a review of a challenge to a regulation prescribing a rate of general application" (footnotes omitted). *Massachusetts*

---

[12] This case was decided on analysis of G. L. c. 7, § 30O, inserted by St. 1968, c. 492, § 3, the predecessor to G. L. c. 6A, § 36. The adjudicatory procedure (except for the conclusiveness of the decision on appeal at the agency level, see note 15, *infra*) under § 36 is essentially the same as that provided in § 30O.

*State Pharmaceutical Assn.* v. *Rate Setting Commn.*, 387 Mass. at 139-140.[13]

Our holding is narrow: where a provider's challenge is to the substantive validity, that is, the adequacy, of a regulation of general application[14] and not to the peculiar application of that regulation to the provider, the division is without authority to act, and the remedy for the provider is to proceed by way of an action for declaratory judgment under G. L. c. 30A, § 7, and G. L. c. 231A.[15]

The hospital and the division insist that the hospital's attack on the rate does not constitute a facial challenge to the commission's regulations but only a complaint that the particular rate set for the hospital does not yield an "adequate, fair and reasonable" return. That, of course, could be said in every case of a challenge to a rate set in accordance with the commission's regulations providing methodology of general applicability.[16]

---

[13] Although this aspect of the case dealt with the substantive validity of a general rate of fixed amount, we think the reasoning also apt where a general regulation is involved by which individual rates are determined. See *Massachusetts Gen. Hosp.* v. *Rate Setting Commn.*, 359 Mass. at 163-165. The court in *Massachusetts State Pharmaceutical Assn.* found it unnecessary to resolve the question of the division's authority but suggested legislative attention to the matter (at 140); to this point there has been no response to what may be a sort of checkerboard paradox.

[14] "In a challenge to a rate for an individual provider, this court has allowed the provider to attack the [commission's] failure to comply with statutory requirements for the promulgation of general regulations pursuant to which the provider's particular rate was determined. See *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n*, 359 Mass. 652, 655 (1971)." *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn.*, *supra* at 139.

[15] There is nothing in *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.*, 378 Mass. 189 (1979), to the contrary. That case simply stands for the proposition that where an appeal is properly before the division for an adjudicatory hearing, the division's conclusions are binding at the agency level.

[16] Whether a provider is challenging the substantive validity of a general regulation or whether it is more narrowly appealing from its own particular rate is not always clear. In *Geriatric Authy. of Holyoke* v. *Rate Setting Commn.*, 21 Mass. App. Ct. 953 (1986), this court reversed a partial summary judgment for the plaintiff in an action for declaratory judgment. A Superior Court judge had found that commission rate-setting regulations

Despite its protestations, the hospital in the proceedings before the division vigorously attacked the substantive validity of regulations of general application, and this is what the division considered and rejected on the merits. The hospital attempted to persuade the division to incorporate ALOS intensity into the methodology of the rate setting calculations. As the hearings officer recognized, the evidence introduced by the hospital was designed to show that ALOS intensity was (and is) an industry-wide "phenomenon" brought on by pressures for cost containment from a variety of sources, including Federal PSRO legislation, the insurance industry, and technological advances. Intensity of any kind was not at the relevant times one of the bases for rate adjustment requests. See 114.1 Code Mass. Regs. § 3.14 (1979).[17]

The hospital's challenge here strikes at the heart of the function which the Legislature has given to the commission — the control of the costs of hospital care in Massachusetts — and the scheme which the Legislature has put in place to accommodate that purpose. See *Mercy Hosp.* v. *Rate Setting Commn.*, 381 Mass. 34, 39 (1980). The propriety of the exercise of that task through the promulgation of regulations of general application must be reviewed under the standards which obtain in

as applied to the Authority's contributions to the municipal retirement system were arbitrary and capricious. We held that the commission's motion to dismiss the complaint should have been granted, because at issue was the application of regulations to a single provider under G. L. c. 6A, § 36. "As was stated in the *Massachusetts State Pharmaceutical Assn.* case, at 132-133, n.11, 'the line between the concepts [of adjudicatory and regulatory proceedings] is not precise' and some regulations may have aspects both of general regulatory impact and of specific application in fixing a rate. Here, we think, the real controversy concerns the application of general regulations to a single provider and thus the issues relate predominantly to the setting of an individual provider's reimbursement rate. Every issue raised by the authority could have been raised and decided in an administrative appeal under G. L. c. 6A, § 36." *Id.* at 955.

[17] The commission first recognized intensity in a 1983 amendment to its regulations, see 114.1 Code Mass. Regs. § 22.14(i) (1983), setting forth the procedure for calculating rates and continues to do so. See 114.1 Code Mass. Regs. § 28.06(4)(b)(8) (1986).

The commission's decision to recognize intensity further illustrates the industry-wide nature of the intensity factor.

a declaratory judgment action, namely, whether the regulations are illegal, arbitrary or capricious. See *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn., supra* at 126-127. To allow the division to reach the underlying substantive validity of a general regulation in an ad hoc adjudicatory proceeding,[18] ostensibly challenging only a particular rate as yielding an unreasonable return, would indeed "make the division the ground level rate setter — a role reserved to the commission." *Woodland Estates, Inc.* v. *Rate Setting Commn.,* 15 Mass. App. Ct. 297, 301 (1983). The allocation of that function to the division would, in our view, wreak havoc on the regulatory plan established by the Legislature. An across-the-board challenge, as here, to regulations of general applicability ought to be determined on a record established and under the standard of review provided in a declaratory judgment action under G. L. c. 30A, § 7, and G. L. c. 231A. ·

A judgment is to enter in the Superior Court remanding the case to the division and directing that the hospital's appeal from the rate set for it by the commission for the fiscal year 1980 be dismissed.

*So ordered.*

---

[18] The division's magistrates necessarily decide only the particular case, and the principle of stare decisis has no binding application.