RATE SETTING COMMISSION vs. BAYSTATE MEDICAL
CENTER, INC.

No. 89-P-1099.

Suffolk. March 8, 1991. - May 10, 1991.

Present: KASS, FINE, & IRELAND, JJ.

*Division of Administrative Law Appeals. Rate Setting Commission. Administrative Law*, Rate setting, Regulations, Judicial review. *Regulation. Practice, Civil*, Review of administrative action, Declaratory relief. *Medicaid.*

Discussion distinguishing jurisdictional aspects of a challenge by a declaratory judgment action under G. L. c. 30A, § 7, and G. L. c. 231A, to the substantive validity of a health care reimbursement rate regulation promulgated by the Rate Setting Commission from a challenge by an administrative appeal under G. L. c. 6A, § 36, to the application of such a regulation to a particular health care provider. [556-558]

A merger and gradual upgrade of staff and facilities of a health care provider and a resultant increase in patient care costs constituted special circumstances, not within the provider's control, unique to the provider, such that application of a reimbursement rate regulation promulgated by the Rate Setting Commission was different from its application to other providers in the class; as a result the provider's challenge to the regulation was properly asserted in an administrative appeal under G. L. c. 6A, § 36, rather than by a declaratory judgment action under G. L. c. 30A, § 7 and G. L. c. 231A. [557, 558-560]

CIVIL ACTION commenced in the Superior Court Department on May 6, 1987.

The case was heard by *Robert A. Mulligan*, J.

*Mark A. Borreliz* (*Brian C. Broderick* with him) for the defendant.

*Douglas H. Wilkins*, Assistant Attorney General, for the plaintiff.

FINE, J. This is another in a series of appeals in which a determination must be made whether a health care provider's claim relating to rates for Medicaid recipients established by

the Rate Setting Commission pursuant to G. L. c. 6A, § 32, is a challenge to the substantive validity of a general regulation or a challenge to the application of that regulation to the provider. See *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Commn.*, 401 Mass. 357, 363-364 n.9 (1987); *Rate Setting Commn.* v. *Division of Hearings Officers*, 401 Mass. 542 (1988); *Beth Israel Hosp. Assn.* v. *Rate Setting Commn.*, 24 Mass. App. Ct. 495 (1987). If the former, the claim would have to be asserted in a declaratory judgment action under G. L. c. 30A, § 7, and G. L. c. 231A. If the latter, the claim may be challenged by an administrative appeal under G. L. c. 6A, § 36.[1]

In the present case, Baystate Medical Center, Inc. (Baystate) in Springfield appealed the reimbursement rates assigned to the hospital for fiscal year 1982 to the Division of Administrative Law Appeals (division). By regulation of the Rate Setting Commission, prospective per diem rates were calculated for each hospital for fiscal year 1982 by using 1980 costs and adjusting them for various factors including inflation. 114.1 Code Mass. Regs. §§ 3.01-3.20 (1981). See *Beth Israel Hosp. Assn.* v. *Rate Setting Commn.*, 24 Mass. App. Ct. at 496-497. Baystate relied on several contentions in claiming that the rates thus established were not "adequate, fair and reasonable." G. L. c. 6A, § 36, as inserted by St. 1973, c. 1229, § 2. Of those contentions, Baystate on appeal relies on only one: that it experienced a shift in its case mix in fiscal year 1982 to more intensely ill patients whose care, because of ancillary services required, was more costly than if the intensity of its case mix had remained as it was in 1980.

After a lengthy hearing, the division issued a decision in which it determined that, based upon special circumstances affecting Baystate's case mix intensity, it had jurisdiction to hear Baystate's claim. On the merits of Baystate's claim, the

[1]Such an appeal would have been taken to the agency known at the time as the Division of Hearings Officers. The division is now known as the Division of Administrative Law Appeals. See G. L. c. 7, § 4H, as appearing in St. 1983, c. 683.

division found that the rates calculated in accordance with the regulation were not fair, and it directed the Rate Setting Commission to adjust the rates upwards based on Baystate's actual costs for fiscal year 1982. The Rate Setting Commission sought reconsideration on the issue, among others, of the voluntariness of the actions taken by Baystate that caused the shift in case mix intensity. In its initial decision the division had commented that "in a sense, these changes were the result of voluntary actions by the [h]ospital . . . ." The division's hearing officer stated in her decision after reconsideration: "The Commission's assertion that I found that the 'cost overruns were incurred voluntarily' is in error. What I found was that the [h]ospital incurred increased costs as a result of case mix intensity because of a variety of medical factors. I also stated that while such factors can be viewed as volitional . . . that is not the same thing as my concluding these costs were within the hospital's control . . . ."

The Rate Setting Commission brought the present action in Superior Court against Baystate and the division.[2] A copy of the division's decision was attached to the complaint. The Rate Setting Commission moved to vacate the award of the division and remand the case to the division with the direction to the division to dismiss it for want of jurisdiction.[3] The judge allowed the motion after hearing and entered judgment for the Rate Setting Commission, concluding that, because the claim was in essence a challenge to the validity of the regulation, the case was directly controlled by *Beth Israel Hosp. Assn.* v. *Rate Setting Commn.*, 24 Mass. App. Ct. 495 (1987), and the only review available was by a declaratory judgment action. We reach a contrary result on the issue of jurisdiction.

The relevant facts, found by the division's hearing officer, are as follows.[4] Between 1974 and 1976, three hospitals

---

[2]The division did not appear to defend the action.

[3]Other claims of error on the part of the division alleged in the petition were not litigated or decided in the Superior Court.

[4]Because the division did not appear in the Superior Court action, no transcript of the proceedings before the division was filed in the case. The division's original written decision and its decision after reconsideration

merged to form Baystate. See *Saint Louis* v. *Baystate Medical Center, Inc.*, *ante* 393, 394 & n.3 (1991). Following the merger, the hospital has evolved from a community hospital to a tertiary care facility providing sophisticated medical services. Because of its improved reputation and more advanced technology, acquired after the merger, its mix of patients shifted towards those whose illnesses were more severe and complex and required more ancillary services. Patient care was more costly during fiscal year 1982 than during fiscal year 1980 by 4.09 per cent as a result of this increase in case mix intensity. Referrals from other hospitals increased, and many patients who during fiscal year 1982 might otherwise have been referred to Boston, Albany, or Hartford were treated at Baystate. The cost of caring for such transfer patients exceeded by 6.65 per cent the cost of caring for Baystate's average patient.[5]

The boundary line, the vagueness of which has been acknowledged, between a challenge to the substantive validity of a regulation and a claim of unfair application of a regulation has been defined most recently in *Rate Setting Commn.* v. *Division of Hearings Officers*, 401 Mass. at 545-547. The court said that a challenge would fall within the latter category "only if the provider can demonstrate circumstances — other than voluntary business decisions — which make application of the rate to that provider *different* from its application to all other providers in the class" (emphasis original). *Id.* at 545 (quoting from *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Commn.*, 401 Mass. at 364). The court went on to illustrate what it meant by "different:"

> "[A] particular provider may service an area containing an unusually high concentration of patients with ex-

---

were before the judge, however, when he ruled on the commission's motion. In our view, the facts found in the division's decision provide an ample basis for this court to decide the question of law before us.

[5]A further intensity factor relied upon by Baystate was the increase in day and out-patient surgery. We do not think that factor strengthens the hospital's claim because the development was State-mandated and could not be a basis for finding unique circumstances affecting Baystate.

treme health care needs; may require unusual equipment because of the unique nature of its services within the class, or because of the nature of its clientele; may traverse a territory with unusual geographic or transportation characteristics imposing a burden that other providers in the same class do not experience; or may cover an area where the population density differs greatly from that in areas covered by similar providers. It is unnecessary to burden the Superior Court with these types of specialized issues." *Id.* at 545-546.

The court repeated the idea that the circumstances making a provider's situation different, justifying a rate hearing before the division, must be "other than voluntary business decisions." *Id.* at 547. See also *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Commn.*, 401 Mass. at 363-364 n.9.

There are, thus, two aspects to the jurisdictional test: the existence of special circumstances and the extent to which they reflect voluntary business decisions. The *Beth Israel* decision, on which the Superior Court judge rested his decision, discussed only the special circumstances test. The claim made by Beth Israel Hospital was based upon a decrease in its patients' average length of stay which, like a shift in case mix intensity toward more seriously ill patients, resulted in an increase in the number of ancillary services per patient day and a corresponding increase in the daily cost of caring for patients. 24 Mass. App. Ct. at 497-498. This court analyzed Beth Israel Hospital's claim as being, in essence, a claim that the regulation was invalid because it should have factored average length of stay intensity into the rate setting methodology. *Id.* at 500-505. In the *Beth Israel* case, however, the pressures causing the decreases in the average length of stay were industry-wide. *Id.* at 504 & n.17. The pressures on Baystate, on the other hand, were not predominantly industry-wide but reflected its evolution from a community hospital to a tertiary care facility. We conclude that special circumstances unique to Baystate made application of the rate for fiscal year 1982 different from its application to other providers in the class.

Effect must also be given to the voluntariness aspect of the jurisdictional test. Unlike the concept of special circumstances, which has been explained and applied in appellate decisions, the phrase "voluntary business decisions," for purposes of the jurisdictional test, has never been applied or explained. The *Beth Israel* decision, in its discussion of the jurisdiction question, did not refer to a voluntariness test. The first time such a test was mentioned for jurisdictional purposes was in dicta in a footnote in *Medi-Cab of Mass. Bay, Inc.*, 401 Mass. at 363-364 n.9; the decision in *Rate Setting Commn.* v. *Division of Hearings Officers*, 401 Mass. at 545-547, only used the phrase in a direct quotation from the *Medi-Cab of Mass. Bay, Inc.* footnote. Thus, no guidance, to date, has been provided as to the meaning of "voluntary business decisions" in the present context.

As the hearing officer commented in her decision, the shift in Baystate's case mix intensity was in some sense voluntary. The changes reflected in the hospital's increased costs could not have come about without the intentional expansion and upgrading of staff, acquisition of sophisticated technology, and other efforts to improve the hospital's reputation in the medical community. On the other hand, it is also true that the shift in patient intensity might be viewed, as it was by the hearing officer, as having been beyond the control of the hospital in the sense that the additional costs were incurred in providing appropriate and necessary medical services to those patients who actually came to the hospital for care. We agree with the hearing officer's application of the voluntariness test to Baystate's claim. The circumstances faced by Baystate between fiscal years 1980 and 1982 are the relevant ones. It seems clear to us that it was primarily the mergers in the mid-seventies, and the gradual upgrading of Baystate's staff, facilities, and reputation which followed, and not any business decisions made in the early eighties, that resulted in sicker patients being admitted to the hospital in fiscal year 1982.

As support for its contention that the hospital's claim fails on jurisdictional grounds because its actions were voluntary,

the Rate Setting Commission calls our attention to the cost containment purposes underlying the statute and regulations in effect at the relevant time.[6] See *Mercy Hosp.* v. *Rate Setting Commn.*, 381 Mass. 34, 39 (1980); *Lynn* v. *Rate Setting Commn.*, 21 Mass. App. Ct. 576, 584 (1986); *Beth Israel Hosp. Assn.* v. *Rate Setting Commn.*, 24 Mass. App. Ct. at 504. The statute requires that, whenever possible, rates be set by regulation on a prospective basis; it does not require reimbursement for actual costs. G. L. c. 6A, § 32. The applicable regulations' use, in determining rates, of experience in a base year, adjusted for inflation, provided an incentive for hospitals and other providers to curtail increases in costs. 114.1 Code Mass. Regs. §§ 3.01-3.20 (1981). Consistent with the regulatory scheme in place at the relevant time and with the cost containment goal, a provider might have been allowed to profit from greater efficiency and reduction of costs. Hospitals would not generally have been rewarded with higher rates, however, for increases in costs deliberately incurred in an effort to change the nature of services provided to patients or to increase their revenues. Thus, a provider's claim that application of the regulations was unfair because of the wholly voluntary upgrading of its services would not have been the type of claim for which an administrative remedy would have been appropriate. We would not carry the cost containment goal so far, however, as to deprive a hospital of an administrative remedy if the upgrading resulted from pressures from the community served by the hospital for improved medical services and the increased costs and the consequent unfairness of the rates resulted only from response to those pressures. We note, in that regard, that some of the particular examples used in *Rate Setting Commn.* v. *Division of Hearings Officers*, 401 Mass. at 545-546, as illustrative of situations in which the division would have jurisdiction over a claim of unfair rates involve decisions undertaken

---

[6]The rate setting methodology has been changed several times since 1981. See *Beth Israel Hosp. Assn.* v. *Rate Setting Commn.*, 24 Mass. App. Ct. at 496 n.4; G. L. c. 6A, § 32, as amended through St. 1989, c. 653, §§ 5-10; G. L. c. 6A, § 32B, as inserted by St. 1988, c. 23, § 3.

by the provider voluntarily but in response to pressures for medical services from the community served by the facility. It is true that those examples were used for the express purpose of illustrating what special circumstances might make the provider's situation *different* from the class as a whole and not to illustrate the application of the voluntariness test. It is unlikely, however, that examples would have been used which would have passed one part of the jurisdictional test but failed another.

The judgment vacating the decision of the division is reversed, and the case is remanded to the Superior Court for further proceedings on other issues raised in the Rate Setting Commission's petition for review, if any, not resolved in this appeal. If there are no other issues to be resolved, the Rate Setting Commission shall be ordered to adjust Baystate's rates as ordered by the division.

*So ordered.*