RATE SETTING COMMISSION *vs.* BAYSTATE MEDICAL CENTER.

Suffolk. February 8, 1996. - May 23, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, & FRIED, JJ.

*Medicaid. Rate Setting Commission. Hospital,* Medicaid reimbursement. *Jurisdiction,* Administrative matter. *Division of Administrative Law Appeals. Practice, Civil,* Review of administrative action, Declaratory proceeding. *Administrative Law,* Rate setting, Regulations, Judicial review, Evidence. *Regulation. Evidence,* Relevancy and materiality. *Words,* "Voluntary business decisions."

The Division of Administrative Law Appeals properly exercised jurisdiction to hear a health care service provider's Medicaid reimbursement rate appeal where the provider demonstrated special circumstances making application of the rate regulation different from its application to other providers in that class and the special circumstances were a result of other than a voluntary business decision, i.e., the circumstances were beyond the provider's control. [747-752]

The Division of Administrative Law Appeals hearing a Medicaid reimbursement rate appeal incorrectly excluded certain evidence proffered by the Rate Setting Commission that was relevant to a consideration of the health care provider's circumstances; where the evidentiary ruling was an error of law resulting in a denial of substantial justice, the matter was remanded for a new hearing. [752-755]

CIVIL ACTION commenced in the Superior Court Department on May 6, 1987.

Following the decision of the Appeals Court reported in 30 Mass. App. Ct. 553 (1991), the case was heard by *J. Harold Flannery,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Pierce O. Cray,* Assistant Attorney General, for the plaintiff.

*Mark A. Borreliz (Brian C. Broderick* with him) for the defendant.

FRIED, J. Following a decision of an administrative magistrate of the Division of Administrative Law Appeals (divi-

sion)[1] ordering the Rate Setting Commission (commission) to raise Baystate Medical Center's (Baystate) Medicaid reimbursement rates for fiscal year 1982, the commission, pursuant to G. L. c. 6A, § 36 (1994 ed.), filed a complaint in the Superior Court claiming that the division exceeded its statutory authority and that the division's decision was erroneous as a matter of law. After a decision by the Superior Court in the commission's favor, Baystate appealed to the Appeals Court which reversed the Superior Court and remanded the case to the Superior Court for further proceedings. The Superior Court then affirmed the decision of the division, and the commission appealed. We allowed the commission's application for direct appellate review.

The commission challenges the division's jurisdiction to hear Baystate's Medicaid reimbursement rate appeal, as well as certain of the division's evidentiary rulings, applications of law, and findings.[2] Although we agree with the Superior Court judge regarding the division's jurisdiction to hear this appeal, we reverse the judgment of the Superior Court and remand the case to the division for further proceedings consistent with this opinion.

I

Baystate provides health care services to the public, including patients who qualify for the Medicaid program. Baystate seeks reimbursement for inpatient treatment of Medicaid patients for the 1982 fiscal year. Although now determined pursuant to the provisions of G. L. c. 6B, § 2, inserted by St. 1991, c. 495, in 1982 the commission determined the Medicaid reimbursement amount hospitals such as Baystate would receive pursuant to the regulations governing the commis-

[1]The Division of Administrative Law Appeals was formerly the Division of Hearings Officers. G. L. c. 7, § 4H, as appearing in St. 1983, c. 683.

[2]Although the Appeals Court ruled on the jurisdictional issue in *Rate Setting Comm'n* v. *Baystate Medical Ctr., Inc.*, 30 Mass. App. Ct. 553 (1991), and this court denied further appellate review, 410 Mass. 1103 (1991), "[i]ssues now argued which were also presented to the Appeals Court are fully before us for consideration on direct appellate review of the judgment entered in the Superior Court following the Appeals Court's remand. Our denial of further appellate review on [the] first appeal does not in any way restrict [the appellant] from presenting to us anew arguments that were unsuccessful before the Appeals Court in the first appeal." *Amherst Nursing Home, Inc.* v. *Commonwealth*, 398 Mass. 850, 852 (1986).

sion's bureau of hospitals and clinics, 114.1 Code Mass. Regs. § 3.00 (1981). Using fiscal year 1980 as a base year, the commission calculated the rate year (fiscal year 1982) per diem rates by dividing inpatient costs by inpatient days for the base year and adding an inflation factor. 114 Code Mass. Regs. § 3.07 (1981). "If a hospital's actual rate year expenses are less than projected, it need not return the overage. On the other hand, if its actual expenses are more than projected, it is not reimbursed for the difference." *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n,* 394 Mass. 233, 238-239 (1985). The purpose of this scheme, since superseded, was to give providers an incentive to keep down the costs they incur in meeting the needs of Medicare patients, an incentive that is absent when providers can expect to pass on to a third-party payor the full amount of costs they incur.[3] In spite of this scheme, however, according to G. L. c. 6A, § 32 (1986 ed.), the reimbursement rates must be "fair, reasonable and adequate." Baystate claimed that the rate, as calculated by the commission, failed to meet the "fair, reasonable and adequate" standard, and Baystate appealed to the division the commission's determination.

Baystate contended that administrative adjustments to the base year were necessary to account for changes in Baystate's "case mix intensity" between 1980 and 1982. Although not a defined term in the regulations, the division defines "case mix intensity" as "a shift, overtime, in a hospital's patient mix to

---

[3]This scheme has now been superseded for this class of provider by a scheme that depends on annually negotiated arrangements with providers. In 1991, the Legislature enacted "An Act improving health care access and financing." St. 1991, c. 495. The Act changed the rate payment system by inserting, inter alia, G. L. c. 6B. See St. 1991, c. 495, § 12. The new legislation affects rates of payments to acute hospitals. The commission states that certain other types of providers remain subject to the system at issue here. According to the commission, "[t]hese providers include resident care facilities (114.2 C.M.R. §§ 4.01-4.17), long term care facilities (114.2 C.M.R. §§ 5.01-5.22), chronic and rehabilitation hospitals (114.1 C.M.R. §§ 37.01-37.20 [1993]), and psychiatric and other 'non-acute' hospitals (114.1 C.M.R. §§ 28.01-28.19). All may appeal to [the division] under [G. L. c. 6A,] § 36."

Unlike the scheme in issue in this case, the current scheme obviates to a large extent the kinds of judgments as to what is a fair and reasonable rate that Baystate asks be made in this case. The rate a provider receives is the one it agreed to, and the cost containment is effected through competitive pressures.

sicker patients and more complex cases; this shift in complexity is characterized, *inter alia,* by increased patient consumption of services — both overall and in specific, ancillary, categories — which in turn yields increased costs." Baystate introduced evidence to this effect before the division.

Baystate, the product of two mergers of three hospitals in Springfield between 1974 and 1976, has evolved into what is known as a tertiary-care facility, that is one providing sophisticated medical services to patients whose needs surpass the resources and abilities of ordinary, community acute care hospitals. See *Rate Setting Comm'n* v. *Baystate Medical Ctr., Inc.,* 30 Mass. App. Ct. 553, 556 (1991); *Wolf* v. *Richmond County Hosp. Auth.,* 745 F.2d 904, 906 n.1 (4th Cir. 1984), cert. denied, 474 U.S. 826 (1985). Many of these patients have been referred by physicians in such community hospitals. According to the division, this evolutionary process, which extended into and beyond the rate year at issue, witnessed significant increases in: "the admission of older, sicker patients; the number of open-heart surgeries . . . ; the number of dialysis inpatients . . . ; the survival rates of low birth weight patients . . . ; the number and complexity of ultrasound and CT examinations; and the number of high-risk obstetrical and gynecological patients." The division found that "[t]hese increases necessarily had a significant effect on [Baystate's] costs." In other words, the division found that an adjustment upward was warranted not because of the increased expense of doing the same thing, or even because more expensive things were being done for the same categories of patients, but because a different category of patients was now coming to the hospital and needed more expensive kinds of care.

The division spent thirteen days hearing this case over a three-month period. The parties presented seventy-one exhibits, five chalks, and twenty-five witnesses. The division declined to admit two of the commission's exhibits.

## II

A. *Jurisdiction.* "[W]here a provider's challenge is to the substantive validity, that is, the adequacy, of a regulation of general application and not to the peculiar application of that regulation to the provider, the division is without authority to act, and the remedy for the provider is to proceed by way of

an action for declaratory judgment under G. L. c. 30A, § 7, and G. L. c. 231A." *Rate Setting Comm'n* v. *Division of Hearings Officers*, 401 Mass. 542, 544-545 (1988), and cases cited. Where, however, a provider challenges the regulation's particular application, the provider may bring an administrative appeal to the division. See *id.* at 545, and cases cited. Baystate contends that it is not challenging the regulatory structure according to which its 1982 rate was established, but rather that, as applied to Baystate, the commission failed to take proper account of Baystate's claim that the rate did not yield a "fair, reasonable and adequate" reimbursement. This is not an easy line to draw. See *Beth Israel Hosp. Ass'n* v. *Rate Setting Comm'n*, 24 Mass. App. Ct. 495, 503-504 & n.16 (1987). In determining whether a provider challenges a regulation's particular application and not its general application — and thus whether the division has jurisdiction — we must apply a two-part test asking "whether the individual provider can demonstrate 'circumstances — other than voluntary business decisions — which make application of the rate to that provider different from its application to all other providers in the class.' " *Rate Setting Comm'n* v. *Division of Hearings Officers, supra* at 547, quoting *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n*, 401 Mass. 357, 364 (1987).

In *Rate Setting Comm'n* v. *Faulkner Hosp.*, 411 Mass. 701, 705 (1992), this court acknowledged the Appeals Court's elaboration on the two-prong jurisdictional test as that court had formulated it in Baystate's appeal from the division's decision in the instant case, *Rate Setting Comm'n* v. *Baystate Medical Ctr., Inc.*, 30 Mass. App. Ct. 553, 557 (1991). Without commenting on whether the Appeals Court in *Baystate Medical Ctr.* properly applied the test, this court in *Faulkner Hosp.* stated that the Appeals Court "elaborated on the two-prong jurisdictional test that a provider must meet to justify a rate hearing before the division. First, there must be special circumstances involving the provider, making application of the rate to that provider different from its application to all other providers in the class. . . . Second, such special circumstances must be other than voluntary or volitional business decisions. In other words, such circumstances must have 'been beyond the control of the hospital.' " *Faulkner Hosp., supra* at 705, quoting *Baystate Medical Ctr., supra* at 558. The commission argues that, although the Appeals Court

elaborated on the two-prong jurisdictional test, it misapplied both prongs of the test. We disagree.

The circumstances Baystate experienced as it evolved from a community hospital to a tertiary-care facility qualify as special circumstances. They were unique, not industry wide. Cf. *Beth Israel Hosp. Ass'n* v. *Rate Setting Comm'n*, 24 Mass. App. Ct. 495, 504 (1987). Although the commission argues that upgrading services in response to "pressures from the community" is not a unique circumstance, our focus in determining whether Baystate had satisfied this prong centers on the hospital as it compares to other hospitals of the same sort. See *Rate Setting Comm'n* v. *Division of Hearings Officers, supra* at 545-546 (setting forth examples of "special circumstances" in determining the division's jurisdiction). In the instant case, Baystate is unlike the Beth Israel Hospital in the *Beth Israel Hosp. Ass'n* case, 24 Mass. App. Ct. 495 (1987). There the Appeals Court found that Beth Israel Hospital experienced an increase in costs due to an industry-wide phenomenon. See *Beth Israel*, supra at 504. Baystate, on the other hand, experienced an increase in costs due to its "evolution from a community hospital to a tertiary care facility." *Baystate Medical Ctr., supra* at 557. Thus Baystate satisfies the first prong. Whether the circumstances arose as a result of a voluntary business decision, however, poses a more difficult issue.

We have not had occasion to explain the phrase "voluntary business decisions" for purposes of the jurisdictional test. Although the phrase has been applied in one other decision, *Faulkner Hosp., supra* at 705, this court did not explain the phrase beyond stating that "clearly on the facts before us, the hospitals had no control over the availability of beds in the nursing homes in the areas where they served." *Id.* The two other appellate cases where the phrase was mentioned, *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n, supra* at 363-364 n.9, and *Rate Setting Comm'n* v. *Division of Hearings Officers, supra* at 545-547, did not provide guidance as to interpretation. See *Baystate Medical Ctr., supra* at 558.

In the instant case the Appeals Court discussed whether Baystate's actions were voluntary:

"As the [administrative magistrate] commented in her decision, the shift in Baystate's case mix intensity was in

some sense voluntary. The changes reflected in the hospital's increased costs could not have come about without the intentional expansion and upgrading of staff, acquisition of sophisticated technology, and other efforts to improve the hospital's reputation in the medical community. On the other hand, it is also true that the shift in patient intensity might be viewed, as it was by the [administrative magistrate], as having been beyond the control of the hospital in the sense that the additional costs were incurred in providing appropriate and necessary medical services to those patients who actually came to the hospital for care." *Baystate Medical Ctr.*, *supra* at 558.

The intentional merger and resulting expansion, the commission argues, is a voluntary business decision which, although it may have as a necessary consequence an increase in complex admissions, is not "beyond the provider's control" and therefore not sufficient to satisfy the second prong.

To some degree, most decisions by hospital administration are voluntary in that they represent a choice among alternative courses of action. Baystate chose to merge and thereby to transform itself into a different kind of hospital providing a different range of services to a different category of patients. Once it had done so, however, the resultant increases in costs as it cared for those new patients was not in any proper sense voluntary. As a tertiary-care hospital it was surely obliged to provide the usual kinds and quality of care that patients entering such hospitals require. So we must ask whether the decision to become a different kind of hospital satisfies the second prong of the test we have endorsed for determining the division's jurisdiction. In answering this question we must not consider the word "voluntary" out of the context in which it is used. That context is a test to determine whether the division should be allowed to decide whether a hospital is entitled to an adjustment to the rate that the standard commission methodology yields because that rate would not be "fair, reasonable and adequate" in that hospital's particular circumstances. The voluntariness test deprives a hospital of recourse to the division and this kind of exemption, if it is the hospital's own decision that has made the commission's (and the statute's) cost-containment methodology bear with particular harshness on it.

The paradigm of such inappropriately voluntary decisions would be those by which a hospital cares for the same class of patients for which it had provided adequately before now in more elaborate and expensive ways — perhaps to attract more patients of that class or to enhance its reputation. But when a hospital repositions itself to care for a different category of patient altogether, the benchmark year cost-containment methodology is quite likely to produce a result that is not fair, reasonable, and adequate. To take an extreme example, if a chronic care hospital or nursing home were to transform itself into an acute care hospital, it would be grossly unfair to determine that hospital's reimbursement rate based on a benchmark established prior to the transformation.

It may be the case that the change of category was unwise or wasteful. That is a matter that would be determined first by the State's certificate of need procedure, which in this as in other such cases seeks to prevent new entrants where they are not needed. G. L. c. 111, § 25C (1994 ed.). Moreover, the voluntariness hurdle is only jurisdictional. The hospital still must demonstrate that the rate is unfair, and the evidence before the division would bear on the degree that the new services were based on patient and community needs rather than institutional empire building and an attempt to compete with existing institutions at the third-party payor's expense.[4] Thus, although we recognize that the regulations provided an incentive to curtail increases in costs, see 114 Code Mass. Regs. § 3.00, the proper focus in determining voluntariness is on the conditions that compel the decisions. As the Appeals Court stated, "[w]e would not carry the cost containment goal so far, however, as to deprive a hospital of an administrative remedy if the upgrading resulted from pressures from the community served by the hospital for improved medical services and the increased costs and the consequent unfairness of the rates resulted only from response to those pressures." *Rate Setting Comm'n* v. *Baystate Medical Ctr., Inc.,* 30 Mass. App. Ct. 553, 559 (1991).

Although used only to illustrate situations demonstrating "special circumstances" for jurisdictional purposes, the examples this court proffered in *Rate Setting Comm'n* v. *Division of Hearings Officers,* 401 Mass. 542, 545-546 (1988), as

---

[4]The current cost containment methodology described in note 3, *supra,* above may obviate the need for such difficult judgments.

the Appeals Court correctly noted, *Baystate Medical Ctr.,* *supra* at 559, also serve to illustrate situations which would satisfy the voluntariness prong. Thus, although the shift in Baystate's case mix intensity was in a sense voluntary, we conclude that it was nevertheless sufficiently motivated by conditions beyond Baystate's control as to satisfy the voluntariness prong. As such the division properly exercised jurisdiction.

B. *Evidentiary rulings.* The commission asserts that the division erred by admitting Baystate's exhibits 12-21 and 38-39 while excluding the commission's proposed exhibit 66 and other material evidence which showed that Medicaid patients had not experienced a change in case mix intensity, and therefore the reimbursement rate was proper. According to the commission, the division's error was twofold: improper exclusion of material evidence and inconsistent treatment. Generally, an agency has "wide discretion in ruling on evidence." *Sudbury* v. *Department of Pub. Utils.,* 351 Mass. 214, 219 (1966). See *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.,* 401 Mass. 282, 286 (1987); *Cliff House Nursing Home, Inc.* v. *Rate Setting Comm'n,* 378 Mass. 189, 192-196 (1979); *AAA Movers* v. *Department of Pub. Utils.,* 354 Mass. 390, 393 (1968). Cf. *Maddocks* v. *Contributory Retirement Appeal Bd.,* 369 Mass. 488, 498 (1976), and cases cited. And generally, the rules of evidence do not apply in administrative hearings. See G. L. c. 30A, § 11 (2) (1994 ed.). "We review [the agency's] evidentiary rulings for errors of law resulting in a denial of substantial justice." *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins., supra.* See *Framingham* v. *Department of Pub. Utils.,* 355 Mass. 138, 144 (1969).

In its decision, the division stated:

"[It] will not impose limits on the type of proof an appellant may submit to prove its claim, save the usual evidentiary constraints of relevance, materiality and competence . . . . In contrast [the division] refused to admit evidence offered by [the commission] which was Medicaid-patient-specific. [The division's] rulings on this issue are based on two long-accepted propositions which comprise much of the basis of the prospective rate set-

ting system: Medicaid patients are assumed to be average patients; a hospital's costs/services undercompensated because afforded to more Medicaid patients than the average will be offset by costs/services overcompensated because afforded to fewer Medicaid patients."

The commission claims that the division's inconsistent treatment of the evidence and the improper exclusion of exhibit 66 as well as other material evidence resulted in a denial of substantial justice. According to the commission, this evidence tended to show that from fiscal year 1980 to fiscal year 1982 Baystate experienced no increase in the cost of treating Medicaid patients. Baystate contends that exclusion of the evidence was proper because: (1) the evidence was irrelevant because the State's Medicaid rate setting scheme is based in the average cost per day of all patients, not just Medicaid patients; (2) the evidence was unnecessary and therefore exclusion was not prejudicial; and (3) it was not inconsistent with other evidentiary rulings. We disagree.

1. *Relevance.* Baystate argues that the excluded evidence was irrelevant in part because the excluded evidence focused on Medicaid patients only and such evidence is irrelevant in determining the propriety of a Medicaid reimbursement rate under a "payor-blind" system.

The commission agrees that "the Medicaid rate regulations, as promulgated under G. L. c. 6A, § 32, created a rate system based upon a hospital's total costs, rather than just its Medicaid-related costs." See *Massachusetts Gen. Hosp.* v. *Weiner,* 569 F.2d 1156, 1157-1159 (1st Cir. 1978) ("the Medicaid rate . . . was established by dividing its base year costs for all inpatients . . . . If Congress had intended 'reasonable costs' to be synonymous with 'actual costs,' however, there would have been no reason for the amendments . . . to provide for the 'reasonable cost' program. . . . [The commission] was not acting arbitrarily or capriciously when it approved as reasonable a reimbursement plan that treated the average cost of a Medicaid patient as if it were equal to the average cost of all patients"). And the commission is correct: the payor-blind system is indeed the appropriate assumption for the commission to adopt as it applies its usual methodology in determining the base rate and extrapolating it to future years. But it is precisely Baystate's complaint that this usual

methodology in its particular circumstances yielded an unfair result. This claim is what gives the division jurisdiction, and it is the sum and substance of Baystate's complaint. But for that reason, the actual experience with Medicaid patients is relevant in a proceeding before the division, because the very issue is whether the rate for reimbursement of Medicaid patients was unfair. The commission's usual methodology requires that it put on methodological blinders in determining Medicaid reimbursement rates. Baystate cannot ask that that methodology be abandoned because in its special circumstances the methodology yields an unfair result while at the same time insisting that its complaint be determined while still wearing the blinders that may favor it. The fairness Baystate seeks requires a consideration of all the circumstances, and none of them may be artificially put out of consideration as the division did here.[5] We conclude therefore that such evidence was relevant and that the premise on which the division excluded the evidence was improper. Thus the failure to consider the evidence of Medicaid patient-specific costs amounted to an "error[ ] of law resulting in a denial of substantial justice." *Massachusetts Auto. Rating & Accident Prevention Bureau* v. *Commissioner of Ins.*, 401 Mass. 282, 286 (1987).

2. *Prejudice.* In the alternative, Baystate contends that exclusion of the evidence was not prejudicial as the evidence was nonresponsive, nonprobative, and cumulative. Claiming that the commission "cryptically" refers to "other evidence"

---

[5]The commission also contends that the division used an improper rate adjustment methodology. The division found that "the hospital services most affected by a change in case mix intensity are the so-called ancillary expenses." According to the division, the ancillary services are the " 'special services' . . . e.g., operating room, anesthesiology, radiology, cardiac catherization, laboratory, oxygen therapy, etc." The division then directed "the Commission to recalculate [Baystate's fiscal year] 1982 rates using [Baystate's] actual [fiscal year] 1982 ancillary expenses (or costs)." The commission argues that the division should have looked only to the costs incurred in treating the 1982 Medicaid patients, rather than in treating all 1982 patients.

Baystate responds that the commission did not raise this issue in its pleadings below, and therefore may not raise it here. Although the pleadings are not reproduced in the record appendix, the issue of preservation is nevertheless largely irrelevant because we remand the case to the division with the instruction that the division reevaluate this case in light of the "fair, reasonable, and adequate" standard. See G. L. c. 6A, § 32 (1986 ed.).

without any elaboration, Baystate focuses on exhibit 66 and contends that exhibit 66: (1) is not responsive to exhibit 39; (2) was merely cumulative; (3) does not speak to the issue of case-mix intensity; and (4) had negligible probative worth. The commission rebuts this contention by asserting: "Exhibit 66 was only one of many instances in which the Commission attempted either to introduce evidence or to advance argument regarding Medicaid-specific costs," and that the division's decision reflects this in its general refusal to admit evidence offered by the commission that was Medicaid patient-specific. The commission argues further that, "[o]n its face, [exhibit 66] shows that the Commission's rate produces a surplus for [Baystate] with respect to Medicaid patients," and thus (1) exhibit 66 and other excluded evidence responds to Baystate's evidence; and (2) failure to admit such evidence demonstrates a lack of reasoned consistency required of the division.

As we conclude that the division's blanket refusal to admit the commission's Medicaid patient-specific evidence was improper and amounted to an error of law resulting in a denial of substantial justice, we do not decide the individual evidentiary issues, but remand the case to the division to reconsider the excluded evidence in light of our conclusion that the division must consider the Medicaid patient-specific costs.

The judgment of the Superior Court is reversed. Judgment shall be entered remanding the matter to the Division of Administrative Law Appeals for a new hearing with instructions to reconsider the excluded evidence. See *Goodridge* v. *Director of the Div. of Employment Sec.,* 375 Mass. 434 (1978).

*So ordered.*